## FILED UNDER SEAL PURSUANT TO 31 U.S.C. 3730(b)

**VALLI KANE & VAGNINI LLP**
**600 OLD COUNTRY ROAD, SUITE 519**
**GARDEN CITY, NEW YORK 11530**
**(516) 203-7180**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| UNITED STATES OF AMERICA *ex rel.* TAMIKA MILLER, and TAMIKA MILLER individually, | ) ) ) **COMPLAINT** |
| Plaintiffs, | ) ) |
| v. | ) **FILED UNDER SEAL** ) ) **JURY TRIAL DEMANDED** ) |
| CITIGROUP INC., CITIBANK, N.A., CITIBANK INC., DOE CORPORATIONS 1-10 | ) ) ) **INDEX NO.** _____ ) |
| Defendants. | ) ) |

---

### PRELIMINARY STATEMENT

1.      This is a *qui tam* action brought in the name of the United States of America by and through the Relator Tamika Miller ("Miller" or "Relator"), to recover treble damages and civil penalties arising from Citigroup Inc., Citibank, N.A., and Citibank Inc. (together "Citibank") and Doe Corporations 1-10 (collectively "Defendants"), concealing, making or causing false records or statements, and breaching Consent Orders with the Office of the Comptroller of the Currency ("OCC") and the Consumer Protection Finance Bureau ("CFPB"), leading to Defendants improperly avoiding and/or decreasing obligations to pay or transmit money or property to the United States Government ("Government") in violation of the Federal False Claims Act, 31 U.S.C. §§ 3729 *et seq.* ("FCA").

1

## FILED UNDER SEAL PURSUANT TO 31 U.S.C. 3730(b)

2.      Citigroup Inc. ("Citigroup") is a multi-national corporation comprised of a global consumer bank, and is a global leader in credit cards, wealth management and commercial banking, serving over 110 million clients in 19 countries.

3.      In 2018, Citigroup had net revenues of $70.8 billion and assets of $1.9 trillion.

4.      Citigroup owns Citibank, N.A., the holding company for Citibank Inc.

5.      Citibank is the third largest bank in the United States with over 200 million customer accounts and operates as a retail/consumer bank and an institutional bank.

6.      Citibank has over 4,600 branches worldwide with more than $300 billion in deposits.

7.      Citibank is the world's largest credit card issuer.  Citibank branded credit cards account for 55 million accounts globally with sales of $448 billion.

8.      Citibank maintains 86 million private label and co-branded credit card accounts.

9.      In its capacity as one of the largest providers of private label and co-branded credit cards, Citibank uses third-party vendors to service its millions of credit card holders.

10.     To monitor the third-party vendors and to comply with Federal guidelines regarding credit card servicing, Citibank created a Third-Party Risk Management Department.   Relator works in that department as a Third-Party Risk Management Onsite Auditor, with a corporate title of Vice-President Senior Risk Analyst IV.

11.     Citibank is required to comply with Consent Order(s) and/or Regulatory Guidance ("Guidance") from various Federal Agencies, including but not limited to the Security and Exchange Commission ("SEC"), the Federal Deposit Insurance Corporation ("FDIC"), the CFPB and the OCC.

2

## FILED UNDER SEAL PURSUANT TO 31 U.S.C. 3730(b)

12.     In or about July 2015 Defendants entered into a Consent Order with the CFPB to address Defendants' deceptive acts or practices relating to the marketing, sale, membership retention, telemarketing, billing, administration and debt collection relating to credit cards. 2015-CFPB-0015 *In the Matter of: Citibank, N.A. Department Stores National Bank; and Citicorp Credit Services Inc. (USA).*

13.     In or about July 2015 Defendants entered into another Consent Order with the OCC to address billing practices regarding identity protection products and marketing and sales practices with regard to debt cancelation products. AA-EC-2015-53 (ie #2015-079) *In the Matter of Citibank, N.A. Sioux Falls, South Dakota & Department Stores National Bank, Sioux Falls, South Dakota.*

14.     Defendants are obligated to comply with the rules and regulations set forth in various Federal Agency Guidelines as well as the requirements as set forth in the Consent Orders.

15.     In or around late 2018, Relator determined that Defendants, knowingly and/or with reckless disregard failed to comply with its prior agreements to adhere to Consent Orders and/or Guidance issued by or on behalf of the, FDIC, OCC, CFPB and/or the Department of Justice ("DOJ") among others, regarding Third Party Risk Management Oversight and Accountability ("TPRMOA") by submitting false information and/or failing to submit information to the Government in order to avoid paying penalties or fines.

16.     Upon information and belief, Defendants were aware that they were not in compliance with Consent Orders, Government Bulletins, Guidance, and/or Regulations, were manipulating audit reports and they were fraudulently submitting documentation to assert that they were in compliance. Upon information and belief, Defendants manipulated the audit reports and

## FILED UNDER SEAL PURSUANT TO 31 U.S.C. 3730(b)

records to hide their failure to comply and thus, avoid their contractual obligations and other fines and penalties.

17.     Based upon her audit and reporting responsibilities with Defendants, Relator has access to various documents and reports, from which she learned that Defendants knowingly misled the Government.  This deliberate and ongoing pattern of conduct, detailed below and supported by documentary and testimonial evidence, violates Consent Orders and federal laws.

18.     To the extent any Doe Corporations 1-10 are involved in the fabrication of reports or the suppression of accurate reports, such that those reports led to the avoidance of obligations (ie fines and penalties) to the Government, such corporations shall also be liable.

19.     Relator therefore brings this action on behalf of the Government in order to recover damages relating to this pervasive ongoing deliberate fraud.

### JURISDICTION AND VENUE

20.     This is a civil action arising under the laws of the United States to redress violations of the False Claims Act, 31 U.S.C. §§ 3729 *et seq*.  This court has jurisdiction over the subject matter of this action pursuant to 31 U.S.C. § 3732, as well as 28 U.S.C. §§ 1331 and 1345.

21.     This suit is not based upon prior public disclosures of allegations or transactions in a criminal, civil, or administrative hearing, lawsuit or investigation or in a Government Accounting Office or Auditor General's report, hearing, audit, or investigation, or from the news media.

22.     To the extent that there has been a public disclosure unknown to the Relator, Relator is the original source of the information presented herein under Federal False Claims Act, (31 U.S.C. §§ 3729 *et seq.*).

23.     Relator has direct and/or independent knowledge of the information on which these allegations are based, and has provided or is concurrently providing to the Attorney General of the

# FILED UNDER SEAL PURSUANT TO 31 U.S.C. 3730(b)

United States, the United States Attorney for the Southern District of New York a statement summarizing known material evidence and information related to the Complaint, in accordance with the provisions of 31 U.S.C. §3730(b)(2) as well as a Declaration pursuant to the Financial Institutions Anti-Fraud Enforcement Act ("FIAFEA") 12 U.S.C. §4201 *et seq.* This disclosure statement is supported by clear and competent evidence documenting Relator's first-hand knowledge of Defendants' conduct described herein.

24.     The Relator on behalf of the United States brings this action pursuant to the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA") 12 U.S.C. § 1833a, to recover civil penalties and other appropriate relief from Defendants on account of its illegal conduct, including its intentional misrepresentations and material omissions regarding its breaching its prior agreements to maintain compliance with various bulletins, guidance and regulations.

25.     This court has personal jurisdiction over Defendants under 31 U.S.C. §3732(a) because Defendants are located in this State and this District, because defendants knowingly concealed audits and reports and/or knowingly and improperly avoided or decreased an obligation to pay the Government through this concealment, and because Defendants have made, used, or caused to be made or used, false or fraudulent records in this District to feign compliance with Consent Decrees, Consent Orders and/or Guidance to avoid payments to the Government. Defendants can be found in, are authorized to transact business in, and are now transacting business in this District.

26.     Venue is proper in this District under 31 U.S.C. §3732(a) and 28 U.S.C. §1391 in that Defendants' transact business within this district.

5

# FILED UNDER SEAL PURSUANT TO 31 U.S.C. 3730(b)

## PARTIES

27.     Plaintiff and Relator is a citizen of the United States and a resident of Brazoria County, Texas. She brings this action on her own behalf and on behalf of the United States Government pursuant to 31 U.S.C. § 3730(b)(1).

28.     Relator is an original source and has direct, personal, and independent knowledge of the information upon which the allegations herein are based.

29.     Defendant Citigroup Inc., is a domestic corporation organized and existing under the State of Delaware, United States of America, and has its principal office in New York City at the address of 388 Greenwich St., New York, New York 10013.   It routinely conducts business and accepts correspondence at its New York address.   On information and belief, a substantial number of the decisions complained of herein were made by this Defendant in Irving, Texas, Dallas County and New York, New York.

30.     Defendant Citibank, N.A., is a domestic corporation organized and existing under the laws of the State of Delaware.  It maintains a principal place of business in New York.  The company is located at 388 Greenwich St., New York, New York 10013 and is a holding company owned by Citigroup Inc.

31.     Defendant Citibank Inc., is a domestic corporation organized and existing under the laws of the State of Delaware.  It maintains a principal place of business in New York.  The company is located at 388 Greenwich St., New York, New York 10013 and owns and operates offices and bank branches throughout the country and is a subsidiary of Citigroup Inc.

32.     Citigroup has a complex corporate structure and a variety of corporations that operate in the United States, and the naming of Doe Corporations 1-10 is designed to encompass any of those corporations or entities that are complicit in the violations described herein.

6

## FILED UNDER SEAL PURSUANT TO 31 U.S.C. 3730(b)

### OVERVIEW AND FACTS

A.    **The False Claims Act and Related Acts**

33.    Originally enacted in 1863, the FCA was substantially amended in 1986 by the False Claims Amendments Act.

34.    The 1986 amendments enhanced the Government's ability to recover losses sustained as a result of fraud against the United States. Further clarifying amendments were adopted in May 2009 and March 2010.

35.    The FCA imposes liability upon any person who "knowingly presents, or causes to be presented [to the Government] a false or fraudulent claim for payment or approval"; or "knowingly makes, uses or causes to be made or used, a false record or statement material to a false or fraudulent claim"; or "knowingly makes, uses, or causes to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government, or knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the Government." 31 U.S.C. § 3729(a)(1)(A), (B), (G). Any person found to have violated these provisions is liable for a civil penalty of up to $11,000 for each such false or fraudulent claim, plus three times the amount of the damages sustained by the Government.

36.    Significantly, the FCA imposes liability where the conduct is merely "in reckless disregard of the truth or falsity of the information" and further clarifies that "no proof of specific intent to defraud is required." 31 U.S.C. § 3729(b)(1).

37.    The FCA also broadly defines a "claim" as one that includes "any request or demand, whether under a contract or otherwise, for money or property and whether or not the United States has title to the money or property, that – (i) is presented to an officer, employee, or agent of the United States; or (ii) is made to a contractor, grantee, or other recipient, if the money

7

## FILED UNDER SEAL PURSUANT TO 31 U.S.C. 3730(b)

or property is to be spent or used on the Government's behalf or to advance a Government program or interest, and if the United States Government – (i) provides or has provided any portion of the money or property requested or demanded; or (ii) will reimburse such contractor, grantee, or other recipient for any portion of the money or property which is requested or demanded." 31 U.S.C. § 3729(b)(2)(A).

38.     The obligation to pay the Government is based upon the express or implied contractual relationship created by the Consent Orders, as well as the mandatory Guidelines, the violation of which establishes a "reverse false claim" under 31 U.S.C. § 3729(a)(g)(1).

39.     The FCA empowers private persons having information regarding a false or fraudulent claim against the Government to bring an action on behalf of the Government and to share in any recovery.  The complaint must be filed under seal without service on any Defendant. The complaint remains under seal while the Government conducts an investigation of the allegations in the complaint and determines whether to intervene in the action. 31 U.S.C. § 3730(b).

40.     Congress enacted FIRREA in 1989 to reform the federal banking system.  Toward that end, FIRREA authorizes civil enforcement of enumerated criminal predicate offenses—as established by a preponderance of the evidence—that affect financial institutions and certain government agencies.  See 12 U.S.C. § 1833a(e).

41.     FIRREA provides that the United States may recover civil penalties of up to $1 million per violation, or, for a continuing violation, up to $1 million per day or $5 million, whichever is less.  12 U.S.C. § 1833a(b)(1)-(2).

42.     Relator brings the FIRREA claims pursuant to FIAFEA. Relator has complied with the requirements to bring a FIRREA whistleblower claim under the FIAFEA in that she has provided a confidential declaration setting forth facts about the alleged fraud.

## FILED UNDER SEAL PURSUANT TO 31 U.S.C. 3730(b)

B.   **Responsibilities To Comply**

43.     There are numerous Federal Agencies who maintain jurisdiction of Defendants and their operations.  Defendants are required to maintain compliance with the directives of these Federal Agencies and the associated Federal Laws.

44.     The Security and Exchange Commission ("SEC") enforces the Sarbanes-Oxley Act ("SOX") which requires Companies, including Defendants to publish information in their annual reports regarding the scope and adequacy of the company's internal control procedures, the corporate structure of any internal control department and the procedures for financial reporting, SOX § 404.

45.     Further SOX § 404 requires that a Company's statement in its Annual Report provide an accurate assessment of the effectiveness of the company's internal controls and procedures.

46.     SOX § 302 requires Defendants to provide periodic statutory certified financial reports.

47.     Generally with respect to internal controls, Sox § 302 requires certified statements attesting to the fact that: (1) the report does not contain any material untrue statements, material omissions or anything that could be considered misleading, (2) the signing officer(s) is responsible for internal controls, has evaluated these internal controls within the previous ninety (90) days and has reported on the findings, and (3) any deficiencies in the internal controls, information on any fraud that involves employees who are involved with internal activities, and any significant changes in internal controls or related factors that could have a negative impact on the internal controls have been set forth in the report.

## FILED UNDER SEAL PURSUANT TO 31 U.S.C. 3730(b)

48.     The FDIC enforces the Bank Service Company Act (12 U.S.C. § 1867) which sets forth the rules and regulations regarding the examination of bank service companies, including Defendants.

49.     12 U.S.C. § 1867 states that "[a] bank service company shall be subject to examination and regulation by the appropriate Federal banking agency of its principal investor to the same extent as its principal investor. The appropriate Federal banking agency of the principal shareholder or principal member of such a bank service company may authorize any other Federal banking agency that supervises any other shareholder or member of the bank service company to make such an examination."

50.     Further, 12 U.S.C. § 1867 applies to sub-contractors and third party suppliers and states, " [n]otwithstanding subsection (a) of this section, whenever a depository institution that is regularly examined by an appropriate Federal banking agency, or any subsidiary or affiliate of such a depository institution that is subject to examination by that agency, causes to be performed for itself, by contract or otherwise, any services authorized under this chapter, whether on or off its premises, (1) such performance shall be subject to regulation and examination by such agency to the same extent as if such services were being performed by the depository institution itself on its own premises, and (2) the depository institution shall notify each such agency of the existence of the service relationship within thirty days after the making of such service contract or the performance of the service, whichever occurs first."

51.     Moreover, Defendants are required to maintain compliance with various OCC and CFPB Bulletins, Guidance and Regulations regarding operations, internal controls and Third Party Suppliers.

52.     One such example is CFPB 2012-03 Third Party Oversight Bulletin which states

## FILED UNDER SEAL PURSUANT TO 31 U.S.C. 3730(b)

that the CFPB "expects supervised banks and nonbanks to oversee their business relationships with service providers in a manner that ensures compliance with Federal consumer financial law, which is designed to protect the interest of consumers and avoid consumer harm.

53.     The 2012-03 Bulletin reminds banks that Title X of the Dodd-Frank Act authorizes the CFPB to examine and obtain reports from supervised banks for compliance with Federal consumer financial laws and for other related purposes and also to exercise its enforcement authority when violations of law are identified.  Further, the CFPB will exercise the full extent of its supervision authority over supervised service providers, including its authority to examine for compliance with Title X's prohibition on unfair, deceptive, or abusive acts or practices.

54.     Finally, the 2012-03 Bulletin provided CFPB's requirements regarding third party service provider relationships and the management of risks associated with those relationships.   Banks were specifically instructed that to limit the potential for statutory or regulatory violations, Banks should take the following, non-exhaustive steps:

- Conducting thorough due diligence to verify that the service provider understands and is capable of complying with Federal consumer financial law;

- Requesting and reviewing the service provider's policies, procedures, internal controls, and training materials to ensure that the service provider conducts appropriate training and oversight of employees or agents that have consumer contact or compliance responsibilities;

- Including in the contract with the service provider a clear expectations about compliance, as well as appropriate in an enforceable consequences for violating any compliance related responsibilities, including engaging in unfair, deceptive,

## FILED UNDER SEAL PURSUANT TO 31 U.S.C. 3730(b)

or abusive actual practices;

- Establishing internal controls and on-going monitoring to determine whether the service provider is complying with Federal consumer financial law; and

- Taking prompt action to address fully any problems identified through the monitoring process, including terminating the relationship where appropriate.

55.    On October 20, 2013, the OCC issued bulletin 2013-29 which provides "guidance to national banks and federal savings associations for assessing and managing risks associated with third-party relationships" and further provides that the OCC "expects a bank to practice effective risk management regardless of whether the bank performs their activity internally or through a third party."

56.    Specifically, the OCC requires banks to have risk management processes that are commensurate with the level of risk and complexity of its third-party relationships and the bank's organizational structures. Therefore, the OCC expects more comprehensive and rigorous oversight and management of third-party relationships that involve critical activities – significant bank functions (e.g., Payments, clearing, settlements, custody) or significant shared services (e.g. information technology) or activities that:

- Could cause a bank to face significant risk if the third party fails to meet expectations.
- Could have significant customer impacts.
- Require significant investment in resources to implement the third-party relationship and manage the risk.
- Could have a major impact on bank operations if the bank has to find an alternative third-party or if the outsourced activity has to be brought in house.

57.    Among other rules in the 2013-29 Bulletin, the OCC expects ongoing monitoring and that banks will maintain oversight and accountability in the managing of

## FILED UNDER SEAL PURSUANT TO 31 U.S.C. 3730(b)

third-party relationships and provide proper documentation and reporting to facilitate oversight of the relationship. The OCC instructs banks to conduct periodic independent reviews to effectively manage the risks posed by third-party relationships.

58.     Banks are made aware that contracts with third-party service providers are subject to examination oversight by the OCC, which includes OCC access to all work papers, drafts, and other materials.  Further, that the OCC generally has the authority to examine and to regulate the functions and operations performed or provided by Third Parties to the same extent as if they were performed by the bank itself.

59.     OCC guidance provides that Bank employees who directly manage third-party relationships should escalate to senior management significant issues or concerns arising from ongoing monitoring.

60.     The OCC expects bank management to engage in a robust analytical process to identify, measure, monitor, and control the risks associated with third-party relationships and to avoid excessive risk taking that may threaten a bank's safety and soundness.

61.     A bank's failure to have an effective third party risk management process that is commensurate with the level of risk, complexity of third-party relationships, and organizational structure of the bank may be an *unsafe and unsound banking practice*. [emphasis in original].

62.     Finally, OCC Bulletin 2013-29 provides that "the OCC may use its authority to examine the functions or operations performed by a third party on the banks behalf."  The OCC will pursue appropriate corrective measures, including enforcement actions, to address violations of law and regulations or unsafe or unsound banking

## FILED UNDER SEAL PURSUANT TO 31 U.S.C. 3730(b)

practices by the bank or its third party.

63.     In July 2015, Defendants entered into Consent Orders/Agreements with both the CFPB and the OCC, requiring them to comply with the terms set forth therein.

64.     CFPB 2015-0015 entered into on or about July 21, 2015 is a 57 page agreement between Defendants and the CFPB that delineates the ongoing compliance, record keeping, reporting, cooperation and other requirements with which Defendants must comply.

65.     OCC 2015-53 entered into on or about July 20, 2015 determined that the bank engaged in unfair practices in violation of Section 5 of the Federal Trade Commission Act ("FTC Act"), and provides for Defendants' continued regulatory compliance and oversight.

66.     Violations of either the CFPB and/or the OCC Consent Orders subject Defendants to civil money penalties under 12 U.S.C. §5565 *et seq.*, and 12 U.S.C. §1818 *et seq.* respectively.

### SPECIFIC FACTS REGARDING THE CLAIMED FRAUD

67.     From 2014 until the present, Miller has been employed by Citibank as a Vice President ("VP") with the functional title of Third Party Risk Onsite Auditor.

68.     As such, Miller is responsible for overseeing compliance for external Third-Party Suppliers to the Defendant's Credit Card Division.

69.     The Third-Party Risk Management Department is responsible for ensuring that Third-Party vendors to the Defendants' Credit Card Division comply with the Government's law, rules and regulations, including Guidance and Consent Orders, but not limited to those mentioned herein.

## FILED UNDER SEAL PURSUANT TO 31 U.S.C. 3730(b)

70.     Relator is responsible for auditing Third-Party Vendors and Suppliers and providing reports, including but not limited to External Executive Summary Reports with respect to compliance with Defendants' and the Governments rules and regulations.

71.     Defendants were aware that to be effective, internal auditors (in-house or outsourced) need to be independent, objective in their findings and maintain consistent application of the policies, regulations, and rules.

72.     During her employment, and as explained more fully below, Miller learned that Defendants were ignoring its agreements with OCC and CFPB by altering her audit and external executive summary reports to avoid red flagging third party compliance failures which were in violation of the Government's guidance and consent orders.

73.     More specifically, as mentioned above, the CFBP and the OCC provide guidance to banking institutions on how to operate and manage risks associated with using third-party vendors. Not only is Citibank subject to this guidance, but it is required to comply with the Consent Orders it has with both Agencies.

74.     In or about January 2016, to maintain compliance with CFBP, OCC and other related guidelines, Citibank's Third-Party Risk Management area created an audit procedure (TPORT) for third party vendors that is implemented and controlled by employees such as Miller.

75.     The TPORT system created a systematic repository of all annual risk review and onsite reviews.

76.     In or about 2017, the TPORT system was upgraded and has evolved into a system that aligns critical concerns regarding compliance with FDIC and OCC guidelines, with the related functionally equivalent department.

## FILED UNDER SEAL PURSUANT TO 31 U.S.C. 3730(b)

77.     In 2018, the TPORT system was further upgraded to ensure that an auditor's finding that a Third-Party failed a critical issue function could not be overridden.  However, Relator has observed that TPORT questions and scoring criteria have been altered such that findings that previously would have resulted in a failure of a critical issue are now being reduced to minor infractions that do not require escalation to superiors and the Government.

78.     In this same time period, the TPORT system upgrade required that a finding of a Third Party's failure to follow or adhere to a critical function would result in a failed audit for that Third-Party. However, Relator's superiors found a way to bypass this internal control resulting in an ability for Defendants to hide critical function failures for their Third-Party Suppliers/Vendors.

79.     Additionally, Relator is responsible for performing external Third-Party Risk Management audits for Supplier(s)/Vendors to the Defendants' Credit Card Division as well as delivering the results of onsite audits to senior management within Citibank through an External Executive Summary Report.

80.     Specifically, Relator is tasked with providing her observations, results, findings and potential deficiencies, including failures to follow internal and external controls to senior officials working for Defendants.

81.     In 2018, Miller witnessed, firsthand, her audit reports regarding violations with the CFPB and OCC Consent Orders and agency guidelines, being altered to provide the reader with the impression that the Third-party Supplier was not in violation regarding critical functions.

82.     Defendants are aware that failures to comply with the OCC and CFPB consent orders and/or violations of OCC, CFPB, FDIC and other similar Federal agency guidelines and procedural rules shall result in significant fines.

## FILED UNDER SEAL PURSUANT TO 31 U.S.C. 3730(b)

83.     On or about December 27, 2018, Relator reported these violations to Defendants Ethics Department.  Despite the obvious evidence to the contrary, on February 19, 2019, following an alleged investigation, she was informed that no violations were found.

84.     Miller has observed senior Citibank management suppressing Audit findings, altering reviews and minimizing audit observations to ensure that Citi is not subject to mandated fines and penalties.

### CONFLICT OF INTEREST

85.     Another significant issue is the structure that has Third Party Risk Auditors reporting directly to the Third-Party Officers.

86.     Third Party Officers are responsible primarily for monitoring external Third-Party Vendor relationships and working with the Business, Operations and Technology, as well as other functional areas, to maximize the Businesses' engagement with the Third Party Vendor.

87.     Third Party officers are supposed to identify, manage and mitigate risk throughout the Third-Party Relationship Lifecycle.

88.     However, all Third-Party Officers are organizationally aligned as the managers of the Third-Party Vendor Onsite Auditors that perform third party supplier onsite reviews(s).  This reporting structure creates an automatic conflict of interest, in that third-party officers have an incentive to suppress failed audits regarding the third-party vendors they manage.

89.     Due to this reporting structure, the third-party officers have total control with respect to what is reported on the External Executive Summary as nothing can be published without their approval.

## FILED UNDER SEAL PURSUANT TO 31 U.S.C. 3730(b)

90.     On several occasions Relator has been prevented from reporting findings she observed while conducting an onsite audit because the third-party officer who directly manages the third-party vendors, is also the Relator's direct manager.

91.     Accordingly, the Third-Party Officer has the ability to pick and choose what issues appear on the External Executive Summaries.  Because the summary is a direct reflection of management of the third-party suppliers, this structure creates a perverse incentive for the Third-party officer to minimize negative findings.

92.     To hide critical compliance issues Defendants created a new report called the Internal Executive Summary which is not provided to Government Regulators.  Instead, Relator's superiors provide the fabricated External Executive Summary which is not as complete and downgrades critical issues to ensure that an audit would be passed.

93.     Issues identified on the Internal Executive Summary do not get escalated and therefore there is no negative impact on a Third-Party Vendor's performance scorecard.

94.     Third-Party Vendors who do not perform "well" can be placed on a "watch list" which flags their performance for the Government and other Banks.  By concealing critical issue failures and other information within the Internal Executive Summary, Defendants undermine compliance with internal Citibank policies and external Government rules, regulations and guidelines.

95.     Relator has observed that her External Executive Summary reports have been altered to reduce the severity of her findings, sometimes eliminating critical issues, which may have been included on the Internal Executive Summary.

18

**FILED UNDER SEAL PURSUANT TO 31 U.S.C. 3730(b)**

96.     Further, Relator learned that her Internal Executive Summaries of various critical issues, were themselves sometimes altered, without her knowledge at that time, to a finding that does not result in a critical failure.

97.     Relator alleges that Defendants' have structured her department and related departments to produce artificially inflated and thus desirable Third-Party Vendor scorecards, which minimize regulatory oversight and potential penalties.

98.     Relator alleges that Defendants produce External Executive Summaries that are manipulated to show the appearance of compliance for the regulators.  Relator further alleges that there is a policy to hide violations and ignore risk in Internal Executive Summaries so that they appear favorable to Defendants and the Third-Party Vendors/Suppliers.

99.     Defendants' failure to ensure the accuracy of reporting in the TPORT system permitted fraud regarding internal control of its Third Party Suppliers and the attendant reporting system audits, allowing Defendants to defraud the Government.


**FACTUAL CONCLUSION**

100.     As a result of Defendants altering reports, suppressing not effective findings, and the creation of fraudulent reports regarding its audits of Third Party Suppliers, which fabricate compliance with its Consent Order agreements with the OCC and CFPB, and violate Federal Law and Guidelines, Defendants have violated SOX §§ 302 and 404, 12 U.S.C. 1867 and various other bulletins and policy statements by the FDIC, OCC and CPFB.

101.     By Defendants falsely certifying compliance with the law Defendants have constituted the making, using or causing to be made or used false records or statements material

## FILED UNDER SEAL PURSUANT TO 31 U.S.C. 3730(b)

to false or fraudulent claims and they directly cause the Government entities to stay enforcement of applicable, warranted fines and penalties.

102.    By Defendants altering reports, suppressing not effective findings and creating fraudulent reports regarding its audits of Third Party Suppliers, Defendants avoided and continue to avoid fines and the punishment meted out by the SEC, OCC, FDIC, and CFPB, among others.

103.    Upon information and belief, based upon the OCC Civil Money Penalties Policies and Procedure Manual (PPM 5000-7) the violations by Defendants, to the extent same reach or exceed the total matrix score of 161, shall result in fines and penalties which may be in excess of $150 million.

### COUNT I

**Defendants Did Knowingly Conceal and/or Knowingly and Improperly Avoid and
Decrease an Obligation to Pay the Government
31 U.S.C. §3729(a)(1)(G)**

104.    All of the foregoing paragraphs are incorporated by reference as though fully set forth herein.

105.    This count is brought by Relator-Plaintiff in the name of the United States under the *qui tam* provisions of 31 U.S.C. § 3730 for Defendants' violation of the False Claims Act, 31 U.S.C. §3729 *et seq.*, as amended.

106.    This is a claim for treble damages, civil penalties and attorney's fees, under the False Claims Act, 31 U.S.C. §§ 3729, *et seq.* as amended.

107.    By means of the unlawful acts described above, Defendants knowingly make, use, or cause to be made or used, a false record or statement  and thus breached its agreement to be bound by OCC, CFPB and other Federal guidelines, avoiding an obligation to pay or transmit money or property to the Government.

## FILED UNDER SEAL PURSUANT TO 31 U.S.C. 3730(b)

108.    Further, Defendants knowingly conceals or concealed or knowingly and improperly breached its agreements with the OCC and the CFPB, and other Federal Agencies, allowing Defendants to avoid or decrease an obligation to pay or transmit money or property to the Government

109.    The United States, unaware of the falsity of the record or statement made knowingly by Defendants, and in reliance on the accuracy thereof believed Defendants to be in compliance and adherence to agreements, did not fine or seek penalties against Defendants for violations.

110.    Defendants each knowingly presented or caused to be presented false or fraudulent reports and/or information to the United States Government.

111.    The false or fraudulent reports and information to the United States failed to disclose unfair, deceptive or abusive acts or practices or breaches by Defendants

112.    The government of the United States, being unaware of the falsity of the reports or information made by defendants, directly or indirectly, and in reliance on the accuracy thereof, has made and has and/or will forestall fines and payments and thereby suffer damages.

113.    The United States is entitled to full recovery of the amounts avoided by defendants or other third parties due to false and fraudulent information provided to the Government.

114.    Upon information and belief, the unlawful, deceptive and unfair conduct described above continued by Defendants is currently on-going.

115.    From about 2018 to the date of this Complaint, by reason of the conduct described above, the United States government has been damaged in an amount that is believed to be in excess of one hundred and fifty million dollars.

## FILED UNDER SEAL PURSUANT TO 31 U.S.C. 3730(b)

116.    The Relator believes and avers that she is an original source of the facts and information upon which this action is based.

### COUNT II

**Defendants Knowingly Make, Use, or Cause to Be Made or Used, a False Record or Statement Material to an Agreement to Avoid Obligations to the Government; 31 U.S.C. §3729(a)(1)(B)**

117.    All of the foregoing paragraphs are incorporated by reference as though fully set forth herein.

118.    This is a claim for treble damages, civil penalties and attorney's fees, under the False Claims Act, 31 U.S.C. §§ 3729, *et seq.* as amended.

119.    By creating knowingly false documents, claims and records as described above, Defendants knowingly made or used false records or statements to avoid fines and penalties due the United States, in violation of 31 U.S.C. §3729(a)(1)(B).

120.    The United States, unaware of the falsity of the records or statements made by Defendants, and in reliance on the accuracy thereof, believed Defendants to be compliance with OCC, CFPB and other Federal Agency Guidelines, forestalled enforcement of rules and regulations which would have resulted in fines and penalties payable by Defendants to the Government.

121.    The report and information provided to the United States was false and failed to alert the United States to the unfair, deceptive and abusive acts or practices, or breaches committed by Defendants.

122.    The government of the United States, being unaware of the falsity of the reports or information made by defendants, directly or indirectly, and in reliance on the accuracy thereof, has and/or will forestall fines and payments and thereby suffer damages.

## FILED UNDER SEAL PURSUANT TO 31 U.S.C. 3730(b)

123.    The United States is entitled to full recovery of the amounts avoided by defendants or other third parties due to false and fraudulent information provided to the Government.

124.    Upon information and belief, the unlawful, deceptive and unfair conduct described above continued by Defendants is currently on-going.

125.    From about 2018 to the date of this Complaint, by reason of the conduct described above, the United States government has been damaged in an amount that is believed to be in excess of one hundred and fifty of million dollars.

126.    The Relator believes and avers that she is an original source of the facts and information upon which this action is based.

### COUNT III

### Conspiracy to Violate the False Claims Act
### 31 U.S.C. §3729(a)(1)(C)

127.    All of the foregoing paragraphs are incorporated by reference as though fully set forth herein.

128.    This is a claim for treble damages, civil penalties and attorney's fees, under the False Claims Act, 31 U.S.C. §§ 3729, *et seq.* as amended.

129.    As set forth above, Defendants and their co-conspirators conspired with one another to defraud the United States government by submitting or causing the submission of false and fraudulent reports to the United States Government as is more fully set forth above.

130.    In furtherance of the conspiracy, Defendants made and used false and fraudulent statements and reports or caused false and fraudulent statements and reports to be made or used for the purpose of feigning compliance with agreements to maintain compliance with OCC, CFPB and other Federal Agency guidelines, avoiding meritorious fines.  These statements and reports were fraudulent for the various reasons set forth in the Complaint.

## FILED UNDER SEAL PURSUANT TO 31 U.S.C. 3730(b)

131.    The United States, unaware of the falsity of the records or statements made by Defendants, and in reliance on the accuracy thereof, forestalled enforcement of rules and regulations which would have resulted in fines and payments by Defendants to the Government.

132.    The report and information provided to the United States was false and failed to alert the United States to the unfair, deceptive and abusive acts or practices, and/or breaches committed by Defendants.

133.    The government of the United States, being unaware of the falsity of the reports or information made by defendants, directly or indirectly, and in reliance on the accuracy thereof, has and/or will forestall fines and payments and thereby suffer damages.

134.    The United States is entitled to full recovery of the amounts avoided by defendants or other third parties due to false and fraudulent information provided to the Government.

135.    Upon information and belief, the unlawful, deceptive and unfair conduct described above continued by Defendants is currently on-going.

136.    From about 2018 to the date of this Complaint, by reason of the conduct described above, the United States government has been damaged in an amount that is believed to be in excess of one hundred and fifty of million dollars.

137.    The amounts of the fines due to the United States, but avoided due to Defendants conspiracy were and/or are material.

138.    The Relator believes and avers that she is an original source of the facts and information upon which this action is based.

## FILED UNDER SEAL PURSUANT TO 31 U.S.C. 3730(b)

### COUNT IV

**Violations of the Financial Institutions Recovery, Reform and Enforcement Act
(FIRREA) 12 U.S.C. §1833a, 12 U.S.C. §1844, 12 U.S.C. §1847, 12 U.S.C. §1867
False entries and reporting in Financial Institution Records**

139.    All of the foregoing paragraphs are incorporated by reference as though fully set forth herein.

140.    Relator, on behalf of the United States seeks relief against Defendants under FIRREA, 12 U.S.C. §§1833a and brought pursuant to the FIAFEA, 12 U.S.C. §4201 *et seq.*

141.    As set forth above, Defendants violated 12 U.S.C. §1844 and 12 U.S.C. §1867 by knowingly and intentionally devising a continuing scheme and artifice to defraud the United States Government of money and property by falsely reporting compliance and providing fabricated Audited Financial Statements of Defendants and their Third-Party Vendors.

142.    These fabricated reports created a threat to Defendants safety and soundness and/or fabricated the operations of Defendants.

143.    The aforementioned violations subject Defendants to fines and penalties which they thus far have successfully avoided by fabricating these audits and records. By reasons of Defendants violations Relator on behalf of the United States is entitled to a civil penalty as required by law for each of the violations set for herein pursuant to FIRREA, 12 U.S.C. §§1833a in the amount of up to the greater of (i) $1 million per violation, (ii) the amount of loss to the United States, or (iii) the amount of gain to Citi.

### PRAYER FOR JUDGMENT

144.    WHEREFORE, Relator, on behalf of the United States Government and the States, seek judgment against Defendant as follows:

# FILED UNDER SEAL PURSUANT TO 31 U.S.C. 3730(b)

a.      Finding and adjudging that Defendant has violated and be enjoined from future violations of the Federal False Claims Act, 31 U.S.C. §§ 3729-32, and the State Statutes and be enjoined from future violations of each Act.

b.      Pursuant to 31 U.S.C. § 3729 *et seq.* ordering Defendant to pay damages in an amount equal to three times the amount of actual damages the United States Government has sustained because of defendant's false or fraudulent claims, plus the maximum civil penalty for each violation of 31 U.S.C. § 3729, *et seq.;*

c.      Relator be awarded the maximum award permitted pursuant to 31 U.S.C. Section 3730 (d) of the FCA and/or any other applicable provision of law;

d.      Relator be awarded the relator's share of any judgment to the maximum amount provided pursuant to the FCA and/or any applicable Statute or provision of law.

e.      On Count five (FIRREA), judgment for the Realtor on behalf Government and civil penalties up to the maximum amount authorized under 12 U.S.C. § 1833a;

f.      On the remaining Causes of Action, Relator requests that Defendant, be ordered to pay damages in an amount equal to three times the amount of actual damages sustained as a result of Defendant's knowingly presenting or causing to be presented false or fraudulent reports and/or information to the United States Government, plus the maximum civil penalty for each violation of the FIRREA statute as set forth herein;

g.      Relator be awarded all costs and expenses of this action, including attorney fees as provided by 31 U.S.C. § 3730(d) and any other applicable provision of law;

h.      In the event the United States proceeds with this action, that Relator be awarded an appropriate amount for disclosing evidence or information that the

# FILED UNDER SEAL PURSUANT TO 31 U.S.C. 3730(b)

United States did not possess when this action was disclosed to the government. The amount awarded to the Relator should include the results of Government actions or settlement of claims resulting from the expansion of claims through the Government's further investigation directly generated from or attributable to Relator's information; and

i.   Relator being awarded such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all claims.

Dated: November 27, 2019

Respectfully submitted,
Attorneys for Plaintiff/Relator

Valli Kane & Vagnini LLP
600 Old Country Road, Suite 519
Garden City, New York 11530
Tel: 516-203-7180
Fax: 516-706-0248

By: _Sara Ann Kane_____
Sara Wyn Kane
Robert J. Valli, Jr.

The Cochran Firm
3400 Carlisle Street, Suite 550
Dallas, Texas 75204
Tel: 214-651-4260
Fax: 214-651-4261

Larry Taylor - Pro Hac Vice Application
Forthcoming

27