```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------- X
                                         :
UNITED STATES ex. rel. TAMIKA MILLER,     :
TAMIKA MILLER                            :
                                         :
                       Plaintiffs,       :
                                         :     19cv10970 (DLC)
            -v-                          :
                                         :     OPINION AND ORDER
CITIGROUP INC., CITIBANK, N.A.,          :
CITIBANK INC., and DOE CORPORATIONS 1-   :
10,                                      :
                                         :
                       Defendants.       :
                                         :
---------------------------------------- X
```

APPEARANCES:

For the United States:
Rebecca Sol Tinio
Jeffrey Kenneth Powell
US Attorney's Office, SDNY
86 Chambers Street
3rd Floor
New York, NY 10007

For Tamika Miller:
Cleveland Lawrence, III
Ezra Bronstein
Richard Condit
Mehri & Skalet, PLLC
2000 K Street, NW
Ste 325
Washington, DC 20006

Robert John Valli, Jr.
Sara Wyn Kane
Valli Kane & Vagnini, LLP
600 Old Country Rd.
Ste. 519
Garden City, NY 11530

For defendants:
Debra Bogo-Ernst

Hans J. Germann
Lucia Nale
Mayer Brown LLP (Chicago)
71 South Wacker Drive
Chicago, IL 60606

Jordan Michael Smith
Akerman LLP
1251 Avenue of the Americas
Ste 37th Floor
New York, NY 10022

DENISE COTE, District Judge:

Tamika Miller (the "Relator") brought this qui tam action against Citigroup Inc., Citibank N.A., Citibank Inc. (together, "Citibank") for alleged misconduct in the auditing and management of Citibank's third-party vendors.  The Relator has moved for a share of a $400 million award the Government secured against Citibank in 2020, and Citibank has moved to dismiss the complaint for failure to state a claim.  For the following reasons, the Relator's motion is denied, and Citibank's motion is granted.[1]

## Background

The following facts are taken from the complaint and are assumed to be true for the purposes of this motion.  Citibank operates a retail and institutional bank, and is the world's

---

[1] The complaint also names Doe corporations.  They have not been identified.  Even if they had been named and served, claims against them would be dismissed for the reasons given below.

largest issuer of credit cards.  Citibank uses third-party vendors to service its credit card holders.

Since 2014, Citibank has employed the Relator to assist in the oversight of its third-party vendors' compliance with applicable laws, regulations, and consent orders.  In that position, the Relator observed what she believes are numerous violations of applicable law, as well as violations of two consent orders that Citibank entered in 2015 with the Office of the Comptroller of Currency ("OCC") and the Consumer Financial Protection Bureau ("CFBP").

To comply with these consent orders, Citibank created TPORT, an auditing system.  The Relator alleges that Citibank manipulated TPORT to suppress reporting of third-party compliance failures.  The Relator also alleges that Citibank's organizational structure inhibits auditors of third-party vendors from reporting issues within the company, and that her own reports have been altered to suppress evidence of compliance failures.  The Relator alleges that Citibank's compliance failures since 2018 have deprived the Government of least $150 million.

In 2018, the OCC issued an order terminating its 2015 consent order against Citibank.  In 2020, however, the OCC entered into another consent order (the "2020 Order") with Citibank in which Citibank agreed to pay a $400 million fine.

The 2020 Order found that Citibank had failed to implement and maintain adequate risk management and compliance programs. The 2020 Order did not, however, specifically refer to Citibank's management of third-party vendors.

On November 27, 2019, the Relator filed this qui tam action under seal, bringing claims against the defendants for improperly avoiding payment obligations (a "reverse false claim") in violation of the False Claims Act, for submitting a false claim in violation of the False Claims Act, for conspiracy to violate the False Claims Act, and for violation of various provisions of the Financial Institutions Recovery, Reform and Enforcement Act ("FIRREA"). In June of 2020, the Government declined to intervene in the action. At the Government's request, the case remained sealed due to the Government's continuing investigation. Ultimately, the complaint was unsealed and eventually served on Citibank.

On January 31, 2022, the Relator moved for a share of the $400 million fine awarded in the 2020 Order. The Relator explained that, in 2019, she had provided the OCC with documentation of Citibank's manipulation of its third-party vendor auditing processes. The Relator contends that this documentation formed the basis for the OCC's 2020 Order. The United States opposed the Relator's motion on April 22.

Citibank opposed the Relator's motion on May 6.  The motion became fully submitted on May 20.

On March 25, while the Relator's motion for a share of the $400 million award was being briefed, Citibank moved to dismiss the complaint for failure to state a claim.  The Relator voluntarily dismissed each claim asserted in the complaint except for the first cause of action against the defendants for submitting a reverse false claim.  The Relator also consented to dismissal of the claims against Citigroup, Inc. and Citibank, Inc.  The motion to dismiss became fully submitted on June 1.

## Discussion

The False Claims Act ("FCA") makes it unlawful to fraudulently avoid or decrease a payment obligation to the United States Government.  31 U.S.C. § 3729(a)(1)(G).  "A private enforcement action under the FCA is called a qui tam action, with the private party referred to as the 'relator.'"  United States v. L-3 Commc'ns EOTech, Inc., 921 F.3d 11, 13 (2d Cir. 2019) (citation omitted).  When a relator brings a claim under the FCA, the United States has 60 days to decide whether to intervene in the action.  31 U.S.C. § 3730(b)(2).  If the United States declines to intervene, the relator "shall have the right to conduct the action."  Id. § 3730(c)(3).  If a qui tam action is successful, the relator "will generally be entitled to receive a portion of the amount recovered from the defendants

(typically 15-30% of the proceeds)." L-3 Commc'ns EOTech, Inc., 921 F.3d at 14 (citing 31 U.S.C. §§ 3730(d)(1)-(2)).

When the Government declines to intervene, it "may elect to pursue its claims through any alternate remedy available." 31 U.S.C. § 3730(c)(5). If the Government pursues an alternate remedy, the relator "shall have the same rights in such proceeding as such person would have had" if the qui tam action had continued. Id. In other words, the relator may be entitled to a share of the Government's alternate award. L-3 Commc'ns EOTech, Inc., 921 F.3d at 23-24. To recover an award in a qui tam action, however, the relator must state a valid claim under the FCA. See id. at 29-30 (no right to a share of an alternate remedy where the qui tam action had been voluntarily dismissed); see also United States ex rel. Bledsoe v. Cmty. Health Sys., Inc., 501 F.3d 493, 522 (6th Cir. 2007) (holding that a relator must allege a valid claim to recover a share of an alternate remedy).

As an initial matter, the $400 million award of which the Relator seeks a share does not appear to be an "alternate remedy" for the qui tam claim asserted in the complaint. See 31 U.S.C. § 3730(c)(5). The Relator alleges that Citibank suppressed critical audits of its third-party vendors, in violation of federal law and two 2015 consent orders with the OCC and CFPB. But only the OCC obtained the $400 million award

6

in the 2020 Order; and before doing so, it had released Citibank from its obligations under the 2015 consent order. Additionally, nothing in the 2020 Order suggests that the fine was imposed for deficiencies in Citibank's oversight of third-party vendors.  The 2020 Order therefore does not appear to relate to any of the misconduct alleged in the complaint.  The Relator's request must be denied regardless, however, because she has failed to state a claim.

    I.    Reverse False Claim

In order to survive a motion to dismiss for failure to state a claim, "[t]he complaint must plead 'enough facts to state a claim to relief that is plausible on its face.'" Green v. Dep't of Educ. of City of New York, 16 F.4th 1070, 1076–77 (2d Cir. 2021) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  "In determining if a claim is sufficiently plausible to withstand dismissal," a court "accept[s] all factual allegations as true" and "draw[s] all reasonable inferences in favor of the plaintiffs." Melendez v. City of New York, 16 F.4th 992, 1010 (2d Cir. 2021) (citation omitted).

A. Obligation to Pay

The FCA imposes treble damages and a civil penalty on any person who "knowingly conceals or knowingly and improperly avoids or decreases <u>an obligation</u> to pay or transmit money or property to the Government." 31 U.S.C. § 3729(a)(1)(G) (emphasis supplied). "Subsection (a)(1)(G) is referred to as the reverse false claims provision because it covers claims of money <u>owed</u> to the government, rather than payments <u>made</u> by the government." <u>United States ex rel. Foreman v. AECOM</u>, 19 F.4th 85, 119 (2d Cir. 2021) (citation omitted).

To state a claim under the reverse false claims provision, a relator must adequately allege the existence of an "obligation" to pay the Government. 31 U.S.C. § 3729(a)(1)(G). An "obligation" refers to "an established duty, whether or not fixed," and may arise from a contractual relationship or statutory or regulatory obligation. <u>Id.</u> § 3729(b)(3). "Where a complaint makes no mention of any financial obligation that the defendants owed to the government, and does not specifically reference any false records or statements used to decrease such an obligation, a court should dismiss the reverse false claim." <u>Foreman</u>, 19 F.4th at 119 (citation omitted).

The Relator alleges that Citibank's third-party vendors often failed audits, but that Citibank suppressed or modified reports to hide these failures. The Relator further alleges

that this conduct violated federal law and Citibank's consent agreements with the Government, thereby giving rise to potential liability for fines and penalties. Accordingly, the Relator argues that Citibank violated the FCA when it concealed these violations from the Government to avoid paying any penalty.

These allegations do not state a reverse false claim. Citibank's alleged violations of federal law or consent orders may have subjected it to liability, but they did not give rise to an "obligation" within the meaning of the FCA. An "obligation" must refer to an "established duty." 31 U.S.C. § 3729(b)(3) (emphasis added). Every court of appeals to have interpreted this provision has held that the mere exposure to liability, standing alone, cannot give rise to an "obligation" under the FCA. See, e.g. United States ex rel. Simoneaux v. E.I. duPont de Nemours & Co., 843 F.3d 1033, 1039 (5th Cir. 2016) ("unassessed regulatory penalties" are not obligations); United States ex rel. Ibanez v. Bristol-Myers Squibb Co., 874 F.3d 905, 922 (6th Cir. 2017) (violation of "Corporate Integrity Agreements" with the Government did not create an obligation); United States ex rel. Barrick v. Parker-Migliorini Int'l, LLC, 878 F.3d 1224, 1231 (11th Cir. 2017) ("[T]here is no liability for obligations to pay that are merely potential or contingent."); see also Foreman, 19 F.4th at 119-20 (liability for money obtained through a false claim is not an "obligation"

creating a reverse false claim). Instead, to state a reverse false claim, a relator must point to a payment obligation that is already due and not contingent on the Government's enforcement decision. See Ibanez, 874 F.3d at 922; Simoneaux, 843 F.3d at 1040.

The Relator attempts to distinguish her case by arguing that Citibank's violations did not just give rise to potential liability for statutory or regulatory violations, but immediately imposed an obligation to pay a penalty under the 2015 consent orders. But the FCA does not distinguish "obligations" to pay that arise under contracts, such as consent orders, from obligations that arise under a regulation or statute -- in each case, liability only attaches when there is an "established" duty to pay. 31 U.S.C. § 3729(a)(1)(G); see also Ibanez, 874 F.3d 922 (violation of agreements with the Government did not give rise to a reverse false claim).

The FCA is designed to provide an incentive for individuals to help the Government collect money that it is owed or that it has improperly paid due to fraud. See Foreman, 19 F.4th at 119. It does not provide a damages award to every person who reports a violation of the law. Although the Relator has asserted that Citibank violated applicable regulation and consent orders, she has not plausibly alleged that these violations gave rise to any

established payment obligation.  Accordingly, her claim must be dismissed.

> B. Rule 9(b)

A reverse false claim is subject to the heightened pleading standard of Rule 9(b), which requires that the relator "state with particularity the circumstances constituting fraud."  Fed. R. Civ. P. 9(b); Foreman, 19 F.4th at 119.  A claim under the FCA must therefore ordinarily "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent."  United States ex rel. Chorches v. Am. Med. Response, Inc., 865 F.3d 71, 81 (2d Cir. 2017).

The complaint does not satisfy Rule 9(b)'s particularity requirement.  Although the complaint generally alleges that the defendants suppressed or falsified reports of third-party compliance failures, it does not identify any specific statement, record, or report that was falsified or withheld from the Government.

The Relator argues that it is not necessary to focus on such details, as her claim does not depend on the presentment of a false statement to the Government.  But the Relator's claim is premised on allegations that Citibank suppressed or falsified reports of third-party compliance with applicable regulations.

11

Rule 9(b)'s heightened standard therefore requires that the Relator specifically identify at least some of the violations or falsified reports at issue.  See Foreman, 19 F.4th at 119 (holding that a reverse false claim must be dismissed when it "does not specifically reference any false records or statements used" to avoid or decrease a payment obligation).  Because she has not done so, her claim must be dismissed for this reason as well.

    II.  Leave to Amend

The Relator requests that, in the event the complaint is dismissed, she be granted leave to amend.  In general, leave to amend should be "freely give[n] when justice so requires."  Fed. R. Civ. P. 15(a)(2).  Leave to amend may be denied, however, "for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party."  Eastman Kodak Co. v. Henry Bath LLC, 936 F.3d 86, 98 (2d Cir. 2019) (citation omitted).

Leave to amend is not appropriate here.  The complaint is premised on a misunderstanding of the kinds of obligations covered by the FCA's reverse false claims provision.  This misunderstanding cannot be cured by amendment.  Additionally, the Relator was already provided an opportunity to amend her complaint after the defendants filed this motion to dismiss, and she was warned that she would likely have no further opportunity

to amend.  Finally, the Relator has not provided any proposed amendment or explained how her complaint would be improved with additional allegations.  See TechnoMarine SA v. Giftports, Inc., 758 F.3d 493, 505 (2d Cir. 2014) ("A plaintiff need not be given leave to amend if it fails to specify . . . how amendment would cure the pleading deficiencies in its complaint.").

The Relator argues that, under Loreley Financing (Jersey) No. 3 Ltd. v. Wells Fargo Securities, LLC, 797 F.3d 160, 189–91 (2d Cir. 2015) (addressing district court's use of pre-motion conference), a plaintiff must always be given at least one opportunity to amend after there has been a definitive ruling on the motion to dismiss.  But the Second Circuit's decision in Loreley Financing does not announce such a rule.  On the contrary, the decision "leaves unaltered the grounds on which denial of leave to amend has been long held proper, such as undue delay, bad faith, dilatory motive, and futility."  Id. at 190 (emphasis supplied).  Additionally, denial of leave to amend is proper where, as here, "the request gives no clue as to how the complaint's defects would be cured."  Id. (citation omitted).  Accordingly, the Relator's request for leave to amend is denied.

## Conclusion

The Relator's January 31, 2022 motion for a qui tam relator's share is denied.  The defendants' March 25, 2022

motion to dismiss is granted. The Clerk of Court shall enter judgment for the defendants and close the case.

Dated:  New York, New York
        June 22, 2022

                                    _____
                                        DENISE COTE
                                    United States District Judge